IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

at CLARKSBURG

**ALBERT RUE and LISA RUE,**
**Husband and Wife,**

      **Plaintiffs,**

v.   CIVIL ACTION NO. 1:22-cv-22-IMK

**IDEAVILLAGE PRODUCTS**
**CORP., and IDVC, LLC,**

      **Defendants.**

> ELECTRONICALLY FILED
> 3/14/2022
> U.S. DISTRICT COURT
> Northern District of WV

## COMPLAINT

COME NOW the Plaintiffs, Albert Rue (hereinafter "Mr. Rue") and Lisa Rue (hereinafter "Mrs. Rue"), by and through the undersigned counsel, Michael D. Crim and Crim Law Office, P.L.L.C., and for their complaint allege and state the following:

### I. Parties, Jurisdiction and Venue

1. Plaintiffs are citizens and resident of Harrison County, West Virginia.

2. Upon information and belief, Defendant, Ideavillage Products, Corp. (hereinafter "Ideavillage"), is a foreign corporation having its principal place of business at 155 Route 46 West, 4th Floor, Wayne, NJ 07470 (Passaic County).

3. Upon information and belief, IDVC, LLC (hereinafter "IDVC"), is a foreign limited liability company, having its principal place of business at 155 Route 46 West, 4th Floor, Wayne, NJ 07470 (Passaic County).

4. Upon information and belief, Ideavillage and IDVC (referred to collectively hereinafter as "Defendants"), are affiliated companies, each of which has an interest in the copper infused compression gloves at issue herein as either an owner or licensee.

5.      The Court has original jurisdiction over this matter pursuant to 28 U.S.C. 1332 as there exists complete diversity of citizenship between the Plaintiffs and the Defendant and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

6.      Personal jurisdiction over Defendants in this judicial circuit pursuant to Rule 4(k) of the Federal Rules of Civil Procedure because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in and throughout the State of West Virginia including this judicial district, and/or derive substantial revenue from their business transactions in West Virginia and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the State of West Virginia such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process and/or Defendants' actions caused injury to Plaintiffs in West Virginia and in this judicial district such that Defendants should reasonably expect such actions to have consequences in West Virginia and this judicial district.

## II.  Facts

7.      Defendants hold themselves out to be a leading developer, producer, marketer, and distributor of quality, innovative consumer products, including, but not limited to, a line of copper-infused compression gloves (hereinafter "Copper Fit Compression Gloves").

8.      Defendants' Copper Fit Compression Gloves are developed, produced, marketed, and distributed under the Copper Fit trademark, which, upon information and belief, is owned by Defendants.

9.      Defendants promote and sell their products, including but not limited to, Copper Fit Compression Gloves, in and throughout the State of West Virginia, and within this judicial district, through national direct response television advertising and at the retail level at well-known

mass retail outlets, including, without limitation, Wal-Mart, Target Stores, Bed Bath and Beyond, Toys R Us, Rite-Aid, CVS and Walgreens.  Defendants also market and sell the Copper Fit Compression Gloves through Ideavillage's own website.

10. Upon information belief, Defendants derive significant revenues from the sale of their products, including, but not limited to, Copper Fit Compression Gloves, within the State of West Virginia, including this judicial district.

11. Upon information and belief, Defendants have designed, manufactured, promoted, advertised, marketed and sold their Copper Fit Compression Gloves for the intended purpose of being used with the operation of miter saws.

12. Defendants have promoted, advertised and marketed their Copper Fit Compression Gloves use with miter saws in television commercials in and throughout the state of West Virginia, including this judicial.

13. Defendants have promoted, advertised and marketed their Copper Fit Compression Gloves for use when operating miter saws on Ideavillage's own website.

14. Defendants have designed, manufactured, promoted, advertised, marketed and sold their Copper Fit Compression Gloves without any product safety warnings.

15. Defendants have designed, manufactured, promoted, advertised, marketed and sold their Copper Fit Compression Gloves without any instructions on the safe use of their product when using them while operating a miter saw.

16. On June 1, 2020, Lisa Rue purchased from Defendants a pair of Copper Fit Compression Gloves for her husband, Albert Rue.

17. On July 17, 2020, Albert Rue was installing baseboards and trim in the bathroom of his and Lisa's house and for the first time used the Copper Fit Compression Gloves that Lisa had purchased on June 1, 2020.

18. On July 17, 2020, after putting on the Copper Fit Compression Gloves, Albert Rue measured a piece of trim for the bathroom and took it to his miter saw to cut.

19. Albert Rue laid the trim on the miter saw and set the angle for the cut. With his right hand on the handle and trigger and his left hand holding the trim in place, Mr. Rue began to make the first cut.

20. When Mr. Rue began to cut the angle, the strap on the left glove popped loose and pulled his hand into the saw blade, resulting in the total amputation of his left hand.

21. After the amputation, Mr. Rue applied pressure to the stump of his arm to minimize blood loss and told Mrs. Rue that she needed to get him to the hospital.

22. Mrs. Rue retrieved Mr. Rue's amputated left hand and the two began driving to the hospital.

23. On their way to the hospital, the Rues were involved in a car accident which resulted in serious injuries to Mrs. Rue and additional and serious injuries to her husband.

24. Emergency personnel were dispatched to the accident site. Due to the severity of their injuries, Mr. and Mrs. Rue were each transported to Ruby Memorial Hospital via air evac.

25. Mrs. Rue was admitted to Ruby Memorial Hospital with serious bodily injuries, some of which are believed to be permanent.

26. After being treated and stabilized at Ruby Memorial Hospital, Mr. Rue was transported via air evac to Allegheny General Hospital for attempted reimplantation of his left hand.

27. Mr. Rue arrived at Allegheny General Hospital and, in addition to the left hand amputation, was diagnosed with closed fractures of multiple ribs on his left side; closed fractures of the right and left tibial plateaus and a cervical spine fracture, as well as other diagnoses.

28. Mr. Rue had his left hand reimplanted at Allegheny General Hospital, but he had to have his left pinky finger surgically amputated.

29. Mr. Rue was hospitalized at Allegheny General Hospital through August 22, 2020.

30. Mr. Rue and Mrs. Rue are still limited in performing their customary and usual activities of daily living and believe that they will continue to suffer from such limitations throughout the remainder of their lives.

### 3. CAUSES OF ACTION

#### COUNT I
#### NEGLIGENCE

31. Plaintiffs incorporate herein by reference paragraphs 1 to 30 of this Complaint as if fully set forth at length below.

32. Defendants were negligent, grossly negligent, careless and reckless in their design, manufacture, development, production, marketing, distribution, promotion, advertising, distribution, sale and/or sale of the subject Copper Fit Compression Gloves as the same were not reasonably safe for their intended and advertised use with miter saws and other high-speed rotary tools.

33. The severe, permanent and catastrophic injuries and damages suffered by Plaintiffs as discussed and described herein were proximately caused by the negligence, gross negligence, carelessness and recklessness of Defendants, including, but not limited to, the following:

    a. designing, manufacturing, advertising, marketing and/or selling the Copper Fit Compression Gloves in a defective and/or unreasonably dangerous condition to intended and foreseeable users;

b.  designing, manufacturing, advertising, marketing and/or selling the Copper Fit Compression Gloves without every safety element that was necessary to protect intended and foreseeable users of said products when using them for their intended and foreseeable purposes;

c.  designing, manufacturing, advertising, marketing and/or selling the Copper Fit Compression Gloves in a condition that made them unsafe for all of their intended and foreseeable purposes and uses;

d.  designing, manufacturing, marketing and/or selling Copper Fit Compression Gloves that could be designed more safely;

e.  designing, manufacturing, advertising, marketing and/or selling the Copper Fit Compression Gloves in such condition that they lacked every element of safety that was necessary to protect intended and foreseeable users of the products;

e.  designing, manufacturing, advertising, marketing and/or selling the Copper Fit Compression Gloves without adequate, necessary and proper warnings about the dangers associated with using the product with miter saws and other high-speed rotary tools;

f.  designing, manufacturing, advertising, marketing and/or selling the Copper Fit Compression Gloves without appropriate instructions regarding the safe use of the product;

g.  failing to design the Copper Fit Compression Gloves in a safe and reasonable manner to avoid the unreasonable risk of harm to intended and foreseeable users likely to be exposed to danger when using them in a manner intended, foreseeable, advertised and marketed;

h.  failing to make use of alternative, feasible designs to avoid the unreasonable risk of harm to intended and foreseeable users likely to be exposed to danger when the product is used in an intended and foreseeable manner; and,

i.  designing, manufacturing, advertising, marketing and/or selling the Copper Fit Compression Gloves without adequate, necessary and appropriate product testing; and,

j.  designing, manufacturing, advertising, marketing and/or selling Copper Fit Compression Gloves in violation of applicable federal, state, local and/or industry standards.

34. As a direct, proximate and foreseeable result of Defendants' negligence, gross negligence, carelessness and recklessness, Plaintiffs have suffered injuries and damages including, but not limited to, the following:

    a.    permanent, debilitating and disabling physical injuries;

    b.    past medical expenses in excess of $1,000,000.00;

    c.    permanent scarring and disfigurement;

    D.    past and future lost wages;

    e.    pain and suffering;

    f.    loss of consortium;

    g.    annoyance, aggravation and inconvenience;

    h.    future medical and rehabilitative treatment and expenses;

    I.    loss of enjoyment of life; and,

    j.    mental anguish and distress.

**WHEREFORE,** Plaintiffs are seeking damages in an amount to be determined by a jury for each of the elements of damage identified herein, along with pre-judgment interest, attorneys' fees, reasonable litigation costs and punitive damages.

## COUNT II
## STRICT LIABILITY

35. Plaintiffs incorporate herein by reference paragraphs 1 through 34 above as if more fully set forth at length below.

36. At all times relevant hereto, Defendants were engaged in the business of developing, designing, manufacturing, producing, marketing, distributing, promoting, advertising, selling and/or supplying Copper Fit Compression Gloves for use with miter saws and other high-speed rotary equipment.

37. Defendants developed, designed, manufactured, produced, marketed, distributed, promoted and advertised for sale the Copper Fit Compression Gloves that were sold to Plaintiffs.

38. The Copper Fit Compression Gloves were in the same condition at the time they were sold to Plaintiffs on June 20, 2020, and used by Mr. Rue on July 17, 2020, as they were when they were manufactured for sale and left Defendants' control.

39. The Copper Fit Compression Gloves sold by Defendants to Plaintiffs were defective as the gloves were not reasonably safe for their intended and foreseeable purposes, including use with miter saws and other high-speed rotary equipment.

40. Among other things, the Copper Fit Compression Gloves sold by Defendants to Plaintiffs were defective in that:

  a. they were designed, manufactured, advertised, marketed and sold in a defective and/or unreasonably dangerous condition to intended and foreseeable users;

  b. they were designed, manufactured, advertised, marketed and sold without every safety element that was necessary to protect intended and foreseeable users of said products when using them for their intended and foreseeable purposes and uses;

  c. they were designed, manufactured, advertised, marketed and sold in a condition that made them unsafe for all of their intended and foreseeable purposes and uses:

  D. they were designed, manufactured, advertised, marketed and sold in such condition that they lacked every element of safety that was necessary to protect intended and foreseeable users of the products;

  e. they were designed, manufactured, advertised, marketed and sold without adequate, necessary and proper warnings about the dangers associated with using the product with miter saws and other high-speed rotary tools;

  f. they were designed, manufactured, advertised, marketed and sold to intended and foreseeable uses without appropriate instructions regarding the safe use of the product;

  g. they were not designed in a safe and reasonable manner to avoid the unreasonable risk of harm to intended and foreseeable users likely to be exposed to danger when using the product in a manner intended, foreseeable, advertised and marketed;

  h. failed to make use of alternative, feasibly designs to avoid the unreasonable risk of harm to intended and foreseeable users likely

        to be exposed to danger when the product is used in an intended and foreseeable manner; and,

    i.    they were designed, manufactured, advertised, marketed and sold without adequate, necessary and appropriate product testing; and,

    j.    they violated applicable federal, state, local and/or industry standards.

41.    At all times relevant hereto, Mr. Rue was using the Copper Fit Compression Gloves for a purpose for which they were designed, manufactured, marketed and sold by Defendants.

42.    At all times relevant hereto, Mr. Rue was using the Copper Fit Compression Gloves in a reasonable, foreseeable and proper manner.

43.    As a direct, foreseeable and proximate result of the defective, dangerous and unsafe condition of the Copper Fit Compression Gloves, Plaintiffs suffered the permanent and catastrophic injuries and damages discussed and described herein, for all of which Defendants are strictly liable.

**WHEREFORE,** Plaintiffs are seeking damages in an amount to be determined by a jury for each of the elements of damage identified herein, along with pre-judgment interest, attorneys' fees, reasonable litigation costs and punitive damages.

.

## COUNT III
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

44.    Plaintiffs incorporate herein by reference paragraphs 1 through 43 as though set forth fully at length.

45.    In designing, manufacturing, advertising, marketing, selling and/or supplying the Copper Fit Compression Gloves, Defendants expressly and impliedly warranted that they were merchantable and fit and safe for their intended uses and ordinary purposes for which they were marketed and sold and that they were free from defect.

46.    The Copper Fit Compression Gloves were specifically designed and intended to be used safely while operating miter saws and other high-speed rotary tools.

47.    In purchasing and using Defendants Copper Fit Compression Gloves, Plaintiffs relied on Defendants' express and implied warranties as described herein.

47. The Copper Fit Compression Gloves as designed, manufactured, advertised, marketed and sold were not safe for their intended, foreseeable and marketed use with miter saws and other high-speed rotary tools and, as a result, Defendants have breached the implied warranties of merchantability and fitness for a particular purpose.

48. As a direct, proximate and foreseeable result of Defendants' breaches of the express and implied warranties of merchantability and fitness for a particular purpose, Plaintiffs suffered the catastrophic and permanent injuries and damages discussed and described herein.

**WHEREFORE,** Plaintiffs are seeking damages in an amount to be determined by a jury for each of the elements of damage identified herein, along with pre-judgment interest, attorneys' fees, reasonable litigation costs and punitive damages.

PLAINTIFFS, by Counsel:

*Michael D. Crim*

_____
Michael D. Crim (WVSB No. 7058)
**CRIM LAW OFFICE, P.L.L.C.**
842 South Chestnut Street
Post Office Drawer 1920
Clarksburg, WV  26302-1920
Telephone:  304-918-1001
Facsimile: (304) 918-1005
Email: mdcrim@wvlawyers.com